# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHRYSTAL HOLMES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE VILLAGES TRI-COUNTY MEDICAL CENTER, INC. d/b/a UF HEALTH CENTRAL FLORIDA; LEESBURG REGIONAL MEDICAL CENTER, INC. d/b/a UF HEALTH CENTRAL FLORIDA; and CENTRAL FLORIDA HEALTH, INC. d/b/a UF HEALTH CENTRAL FLORIDA<br><br>Defendants. | Case No.:<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>[Filed concurrently with Civil Cover Sheet and Corporate Disclosure Statement]<br><br>Action Filed:       September 3, 2021<br>Complaint Served:   September 15, 2021 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendants The Villages Tri-County Medical Center, Inc. d/b/a UF Health Central Florida ("The Villages"); Leesburg Regional Medical Center, Inc. d/b/a UF Health Central Florida ("LRMC"); and UF Health Central Florida d/b/a UF Health Central Florida ("Central Florida") (collectively, "UF Health Central Florida" or "Defendants") removes the action filed by Chrystal Holmes ("Plaintiff"), on behalf of herself and all others similarly situated, in the Circuit Court for the Fifth

Judicial Circuit in and for Lake County, Florida, Case No. 35-2021-CA-001536-AXXX-XX, to the United States District Court for the Middle District of Florida.

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## THE ACTION & TIMELINESS OF REMOVAL

## FACTUAL AND PROCEDURAL BACKGROUND

3.      On September 3, 2021, Plaintiff, on behalf of herself and, purportedly, all others similarly situated, filed a Class Action Complaint (the "Complaint") against UF Health Central Florida in the Circuit Court for the Fifth Judicial Circuit in and for Lake County, Florida, Case No. 35-2021-CA-001536-AXXX-XX (the "State Court Action").  Plaintiff filed the Complaint as a putative class action.  A true and correct copy of the Complaint in the State Court Action is attached hereto as **Exhibit A**.

4.        On September 15, 2021, Plaintiff served UF Health Central Florida with copies of the Summons and Complaint via process server. True and correct copies of the Summons and Proofs of Service are attached hereto as **Exhibit B.**

5.        A copy of the docket in the State Court Action is attached as **Exhibit C.**

6.        Pursuant to 28 U.S.C. § 1446(a), all other process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice of Removal as **Exhibit D**.

7.        This removal is timely because UF Health Central Florida filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

8.        <u>Basis of Original Jurisdiction</u>.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. Section 1332(d) further provides that, for original jurisdiction to exist, "any member

3

of a class of plaintiffs" must be a "citizen of a State different from any Defendant."

28 U.S.C. § 1332(d)(2)(A).

9.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), UF Health Central Florida may remove the State Court Action to federal court under CAFA because: (i) this action is pled as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendants; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## THE ACTION IS PLED AS A CLASS ACTION

10.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute* or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).

11.     Plaintiff brings this action as a "class action" and seeks class certification under Florida law pursuant to Florida Rules of Civil Procedure, Rule 1.220(b)(2), (b)(3), and (d)(4).  [Compl. ¶¶ 1, 77.]  Because "Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, is based on Federal Rule of Civil Procedure 23," *Concerned Class Members v. Sailfish Point, Inc.*, 704 So. 2d 200,

201 (Fla. Dist. Ct. App. 1998), the first CAFA requirement is met. [Compl., ¶ 77 ("Plaintiff brings this nationwide class action . . .").]

### THE PUTATIVE CLASS INCLUDES AT LEAST

### ONE HUNDRED (100) MEMBERS

12.     Plaintiff alleges that "[o]n or around May 29 to May 31, 2021, an unauthorized actor obtained unauthorized access to [Defendants'] computer network as part of a ransomware attack" that may have resulted in the unauthorized actor accessing the "PII and PHI of [Defendants'] current and former patients…" (the "Ransomware Attack").[1]   [Compl., ¶¶ 5-6.]   Plaintiff further alleges that the Ransomware Attack occurred as a result of Defendants' "failure to: (i) adequately protect the PII and PHI of [Defendants'] current and former patients; (ii) warn [Defendants'] current and former patients of [Defendants'] inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities and incidents." [Compl., ¶ 12.]

---

[1] Plaintiff defines "PII" as "names, addresses, dates of birth, and/or Social Security numbers." [Compl., ¶ 1.]  Plaintiff defines "PHI" as "health insurance information, medical record numbers, patient account numbers, and/or limited treatment information." [*Id*.]

4825-9525-8878.12

13.     Based on these allegations, Plaintiff asserts three causes of action against Defendants: (1) negligence, (2) breach of contract, and (3) breach of fiduciary duty. [*See, generally,* Compl.]

14.     Furthermore, Plaintiff purports to bring these three causes of action on behalf of herself and a nationwide class (the "Class"). [Compl., ¶ 78.] Plaintiff defines the Class as: "All individuals whose PII and/or PHI was accessed or potentially accessed during the [Ransomware Attack] event referenced in the Website Notice." [*Id.*]

15.     Although Plaintiff alleges that "the exact numbers of members in the Class can be ascertained through Defendants' records," she does allege that "[o]n July 30, 2021, Defendants notified the U.S. Department of Health and Human Services that 700,981 individuals were affected by the [Ransomware Attack]." [Compl., ¶ 81.]

16.     Defendants mailed notification to approximately 646,358 people within the United States that their information may have been impacted by the Ransomware Attack.

17.     Therefore, the number of putative class members exceeds the statutorily required minimum of 100.

4825-9525-8878.12

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

18.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." (emphasis added). *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla. Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member was a citizen of a state other than [that of Defendants] at the time of removal").

19.     <u>Plaintiff's and the Putative Class' Citizenship</u>.  To be a "citizen" of a state, the individual must not only reside in that state, but he or she also must "inten[d] to remain in that state."  *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021). Here, Plaintiff alleges in the Complaint that she "is a citizen of Florida residing in Lake County, Florida." [Compl., ¶ 15.] The putative class she seeks to represent, however, is much broader and more expansive geographically. After determining whose information could have potentially been impacted by the Ransomware Attack, Defendants sent notifications of the Ransomware Attack to people with addresses in all 50 states and the District of Columbia.  And while "residency does not equate to citizenship," *Smith*, 991 F.3d at 1157 (11th Cir. 2021), in this case, where only one putative class member must reside and intend to remain

7

in a state different than Florida, it is more likely than not that at least one of the approximately 646,358 putative class members is a non-Florida citizen.

20.      <u>Defendants' Citizenship</u>.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters."  *Id*. "The public often (though not always) considers it the corporation's main place of business."  *Id*. at 1193.

21.      The Villages is a Florida corporation.

22.      Pursuant to *Hertz*'s nerve center test, The Villages has its principal place of business in Florida.  Specifically, its headquarters are located at 1451 El Camino Real, The Village, Fl 32159.  Accordingly, The Villages is a citizen of the State of Florida.

23.      LRMC is a Florida Corporation.

24.      Pursuant to *Hertz*'s nerve center test, LRMC has its principal place of business in Florida.  Specifically, its headquarters are located at 600 E. Dixie

Avenue, Leesburg, FL 34748.  Accordingly, LRMC is a citizen of the State of Florida.

25.      Central Florida is a Florida corporation.

26.      Pursuant to *Hertz*'s nerve center test, Central Florida has its principal place of business in Florida.  Specifically, its headquarters are located at 410 Childs St., Leesburg, FL, 34748.  Accordingly, Central Florida is a citizen of the State of Florida.

27.      As established in Paragraphs 20-26 above, minimal diversity of citizenship exists pursuant to CAFA because each of the Defendants is a citizen of the State of Florida, and it is more likely than not that at least one of the approximately 646,358 putative class members is a citizen of a state other than Florida.

28.      Furthermore, neither Defendants nor Plaintiff can show, let alone demonstrate, that CAFA's "local controversy exception" applies.  The "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith.*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).  With over 640,000 putative class members with addresses in all 50 states, there simply is no

way to know who is a citizen of what state without speaking directly to each of those over 640,000 individuals. *Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says"). This is especially true here, where "citizens of other states may live part of the year in Florida…, but maintain a permanent residence elsewhere." *Id* at 1158. Further exacerbating this problem is the nature of the putative class here, many of whom were residents in nursing care facilities. And, as the Court in *Smith* noted, just because a person "ha[s] to enter into a short-term care nursing facility while in Florida" in no way means they are citizens of Florida. *Id*.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[2]

29.      Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendants must prove by a

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny

4825-9525-8878.12

preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C.A. § 1446(c)(2)(B).  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).

30.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

31.     <u>Breach-of-Contract Claim.</u>   Plaintiff alleges that "Defendants acquired and maintained the PII and PHI of Plaintiff and the…Class" and that, in doing so, "entered into contracts with Plaintiff and the…Class requiring Defendants to protect and keep private medical information of Plaintiff and the…Class." [Compl., ¶¶ 130, 132.]   Plaintiff further alleges that "Defendants breached the contract they made with Plaintiff and the…Class by failing to protect and keep private medical information of Plaintiff and the…Class." [Compl., ¶ 134.]

32.     As a result of Defendants' alleged breach of contract, Plaintiff claims that she and the Class "have suffered (and will continue to suffer) ongoing,

---

Plaintiff is entitled to recover any amount, and deny that a class can be properly certified in this matter.

imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of confidentiality of the stolen data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm." [Compl., ¶ 135.]

33.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Defendants' alleged breach of contract.  However, because Plaintiff does seek recovery for time and money spent "scrutinizing bank statements, credit card statements, and credit reports," as well as "expenses and/or time spent initiating fraud alerts [and] decreased credit scores and ratings," one option for assigning a value to these damages is through the cost of credit monitoring.  The cost of credit monitoring is the "out-of-pocket expenses" associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or authorized use of their PII and PHI that Plaintiff alleges she and the Class are at risk of in the future.

34.     Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from

$14.99 to $19.95 per person per month.  For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $14.99 per month.[3]  Similarly, both Equifax[4] and Experian[5] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 per month.  Multiplying just the cost of providing one month of credit-monitoring services at $14.99 (the cheapest

---

[3] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited: October 6, 2021).

[4] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited: October 6, 2021)

[5] See https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id=_k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&k_kw=aud-422897489015:kwd-317312162328&k_mt=e&pc=sem_exp_google&cc=sem_exp_google_ad_858684474_43905679139_515842009606_aud-422897489015:kwd-317312162328_e___k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&ref=identity&awsearchcpc=1&gclid=EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE (last visited: October 6, 2021).

of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $9,688,906.42 (calculated as: 646,358 individuals notified, times 1 month, times $14.99 per month).

35.     <u>Negligence Claim</u>.  Plaintiff alleges that Defendants, "through their actions and/or omissions, unlawfully breached [their] duties to Plaintiff and the…Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and the…Class during the time the PII and PHI was within Defendant's possession and control." [Compl., ¶ 111.]   Specifically, Plaintiff alleges (1) that "[a]s a condition of their treatment by Defendants, Defendants' current and former patients were obligated to provide and entrust Defendants with certain PII and PHI" [Compl., ¶ 94]; (2) that "Plaintiff and the…Class entrusted their PII and PHI to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their PII and PHI for business purposes only, and/or not disclose their PII and PHI to unauthorized third parties" [Compl., ¶ 95]; (3) that "Defendants had a duty to," among other things, "exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties" [Compl., ¶ 98]; and (4) that Defendants breached that duty [Compl., ¶ 111].

4825-9525-8878.12

36.     Plaintiff further alleges that "[a]s a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the…Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or authorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity address and attempting to mitigate the present and future consequences of the [Ransomware Attack], including, but not limited to, efforts spent researching how to prevent, detect, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk of their PII and PHI, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the current and former patients' PII and PHI in their continued possessions; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the [Ransomware Attack] for the remained of the lives of Plaintiff and the Class." [Compl., 124.]

37.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class

15

are allegedly entitled for Defendants' alleged breach of contract.  But, as stated above, just one month of Norton360 with LifeLock for each member of the Class would amount to, at a minimum, $9,688,906.42.  Plaintiff's other allegations do not support or suggest the amount in other economic and noneconomic damages, especially given that Plaintiff does not allege that either she or any member of the Class has suffered fraud, attempted fraud, or out-of-pocket expenses as a result of the Ransomware Attack.  Therefore, Defendants do not include in the calculation of the total amount in controversy Plaintiff's alleged damages arising from Defendants' alleged negligent acts or omissions.  However, when these alleged damages are combined with the cost of just one month of credit monitoring for the entire Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.[6]

38.     Breach-of-Fiduciary-Duty Claim.     Plaintiff alleges that "a relationship existed between [her], the…Class, and Defendants in which [she] and the…Class put their trust in Defendants to protect the private information of Plaintiff and the…Class and Defendants accepted that trust." [Compl., ¶ 139.]  Plaintiff further alleges that Defendants "breached that fiduciary duty…by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest

---

[6] As discussed below in Paragraphs 42 and 43, to the extent Plaintiff can recover any money under either her negligence or breach-of-confidence claims, that amount is capped at $300,000 pursuant to Florida's sovereign immunity statute.

4825-9525-8878.12

loyalty, and failing to protect the private information of Plaintiff and the…Class."
[Compl., ¶ 140.]

39.     Plaintiff alleges that "[a]s a direct and proximate result of
Defendants' breach of fiduciary duty, Plaintiff [is] entitled to and demand[s] actual,
consequential, and nominal damages and injunctive relief." [Compl., ¶ 144.]
Plaintiff's Complaint, however, contains no allegations that would support or
suggest the amount in "actual, consequential, and nominal damages" she or any
member of the Class allegedly sustained as a result of Defendants' alleged breach of
fiduciary duty.  Therefore, Defendants do not include in the calculation of the total
amount in controversy Plaintiff's or the Class' alleged breach-of-fiduciary-duty
damages.  However, when Plaintiff's and the Class' alleged breach-of-fiduciary-duty
damages are combined with the cost of just one month of Norton360 with LifeLock
credit monitoring for each member of the Cass, the amount in controversy further
exceeds CAFA's $5,000,000 threshold.

40.     <u>Total Amount in Controversy</u>.  Based on the discussion above, the
amount in controversy based just on one month of Norton360 with LifeLock credit
monitoring for each member of the Cass exceeds the $5,000,000 CAFA minimum
before ever taking into account other forms of compensatory damages, injunctive
relief, or attorneys' fees, which, as discussed below, adds even more to the total
amount in controversy.

4825-9525-8878.12

41.     Other Claims.  In addition to the damages discussed above, Plaintiff also requests injunctive relief for herself and the Class. [Compl., Prayer for Relief.] In certain circumstances, where the value of injunctive relief is not too speculative, the value can be considered when determining the amount in controversy. *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 929 (11th Cir. 2019) (finding CAFA jurisdiction where the plaintiffs' "injunctive demand…is an integral and key component of her complaint valued at over $75 million.").  Here, however, no allegations in the Complaint allow Defendants to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, Defendants have not included that value in the calculation o of the total amount in controversy.   Nevertheless, Defendants underscore the allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## IMPACT OF IMMUNITY

42.     Under well-settled Florida law, the state and its agencies or subdivisions are entitled to sovereign immunity.  *See* Fla. Stat. Ann.§ 768.28(1). Under that statute, "[a]ctions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment

under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted ***subject to the limitations specified in this act***." *Id.* (emphasis added). More specifically, "[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $200,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $300,000." *Id.* at § 768.28(5)(a). Defendants are "not-for-profit subsidiary[ies]" of Shands Teaching Hospital and Clinics, Inc., and, therefore, any recovery for tort claims against Defendants is unquestionably capped at $300,000. Fla. Stat. Ann. § 1004.41 (4)(e).

43.    Defendants also believe that sovereign immunity bars entirely Plaintiff from recovering under her breach-of-contract claim. However, based on Defendants' meet-and-confer efforts with Plaintiff, Defendant understands that Plaintiff does not believe sovereign immunity has any impact on her breach-of-contract claim. Thus, while any amounts Plaintiff may recover under her two tort claims will be capped at $300,000, Plaintiff has alleged, as discussed above, more than $5,000,000 in controversy for her breach-of-contract claim, should it survive at all.

4825-9525-8878.12

## NOTICE

44.       As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and are filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Fifth Judicial Circuit in and for Lake County, Florida.

Respectfully submitted,

DATED:  October 14, 2021        **BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*
           Julie Singer Brady
           Florida Bar No. 389315
           Email:   *jsingerbrady@bakerlaw.com*
           200 South Orange Avenue, Suite 2300
           Orlando, FL 32801
           Telephone: 407.649.4000
           Facsimile: 407.841.0168

           *Attorneys for Defendants*
           THE VILLAGES TRI-COUNTY MEDICAL
           CENTER, INC. d/b/a UF HEALTH CENTRAL
           FLORIDA; LEESBURG REGIONAL
           MEDICAL CENTER, INC. d/b/a UF HEALTH
           CENTRAL FLORIDA; and CENTRAL
           FLORIDA HEALTH, INC. d/b/a UF HEALTH
           CENTRAL FLORIDA

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing **DEFENDANTS'**

**NOTICE OF REMOVAL** was filed and served through the Court's ECF system

on this 14th day of October, 2021, on all counsel of record.


*/s/ Julie Singer Brady*
Julie Singer Brady

21

4825-9525-8878.12