## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHRYSTAL HOLMES, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE VILLAGES TRI-COUNTY MEDICAL CENTER, INC. d/b/a UF HEALTH CENTRAL FLORIDA; LEESBURG REGIONAL MEDICAL CENTER, INC. d/b/a UF HEALTH CENTRAL FLORIDA; and CENTRAL FLORIDA HEALTH, INC. d/b/a UF HEALTH CENTRAL FLORIDA<br><br>　　　　　　Defendants. | Case No.:  5:21-cv-00508-JA-PRL<br><br>**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**<br><br><br>Action Filed:　　　　September 3, 2021<br>Complaint Served:　　September 15, 2021 |

## DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants The Villages Tri-County Medical Center, Inc. d/b/a UF Health the Villages Hospital (erroneously sued as The Villages Tri-County Medical Center, Inc. d/b/a UF Health Central Florida) ("The Villages"); Leesburg Regional Medical Center, Inc. d/b/a UF Health Leesburg Hospital (erroneously sued as Leesburg Regional Medical Center, Inc. d/b/a UF Health Central Florida) ("LRMC"); and Central Florida Health, Inc. d/b/a UF Health Central Florida ("Central Florida") (collectively, "UF Health Central Florida" or "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby move to dismiss Plaintiff's Class Action Complaint dated May 17, 2021, [Dkt. No. 1-1] ("Complaint"), and in support thereof, state as follows:

## I.   <u>INTRODUCTION AND BACKGROUND</u>

In May 2021, UF Health Central Florida learned that it was being targeted by a third-party criminal who was trying to gain access to and encrypt its systems in the hopes of extorting from UF Health Central Florida a ransom (the "Ransomware Attack"). While UF Health Central Florida responded quickly to the Ransomware Attack and limited the disruption it caused, UF Health Central Florida was required, by law, to notify individuals whose personal information may have been impacted by the Ransomware Attack. Plaintiff Chrystal Holmes ("Plaintiff") was one of those individuals.

Approximately one month after Plaintiff received notification of the Ransomware Attack from UF Health Central Florida, Plaintiff filed this lawsuit. Plaintiff did not file the lawsuit because, as a result of the Ransomware Attack, someone obtained and fraudulently used or even attempted to use her personal information. Nor did she file the lawsuit because the Ransomware Attack caused her to incur any out-of-pocket costs. She filed the lawsuit because she was notified of the Ransomware Attack; nothing more.

Under Florida law, notification of a Ransomware Attack does not allow an individual, like Plaintiff here, to file a lawsuit. More is required. For each of her claims—negligence, breach of contract, and breach of fiduciary duty—Plaintiff must allege that she suffered a cognizable injury caused by the Ransomware Attack. She has not. For that reason alone, her claims must be dismissed.

But that is not the only reason to dismiss her claims. Plaintiff asserts a cause of action for alleged breach of "contract" against UF Health Central Florida based merely on unspecified statements UF Health Central Florida made in its privacy policy regarding its obligations to comply with HIPAA. That claim, however, fails for multiple reasons. First, under Florida's

sovereign immunity statute, UF Health Central Florida is immune from breach of contract claims like those alleged here where the claim is based on an implied contract and not an express, written, contractual promise.  Second, Plaintiff has not properly pled her implied contract claim because she fundamentally fails to identify any statement where UF Health Central Florida promised to protect her information. In fact, the privacy policy expressly states that data breaches may happen and that UF Health Central Florida has an obligation to notify her of a breach under HIPAA. This statement cannot somehow form the basis for an implied contractual promise to prevent third party criminal attacks.

Plaintiff also asserts a claim for breach of fiduciary duty based on UF Health Central Florida's alleged fiduciary duty to protect her personal information.  The problem with that claim, however, is that while UF Health Central Florida, as a medical care provider, may have a fiduciary duty to Plaintiff with regard to her medical treatment, that does not mean that those *fiduciary* duties extend so far as to include obligations to protect her information being stored electronically. In fact, aside from baldly stating that such a duty exists, Plaintiff alleges no facts that would support the finding of such a duty.

Ultimately, Plaintiff has failed to state a single, viable claim against UF Health Central Florida.  Therefore, UF Health Central Florida's Motion to Dismiss should be granted, in its entirety and with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS

On September 3, 2021, Plaintiff Chrystal Holmes filed in the Circuit Court for the Fifth Judicial Circuit in and for Lake County, Florida her putative class-action complaint ("Complaint") against UF Health Central Florida, asserting claims allegedly arising out of the Ransomware

Attack.[1]  [*See* Dkt. No. 1-1.]  Those claims included: (1) negligence, (2) breach of contract, and (3) breach of fiduciary duty.  [*See, generally, id.*]

As the basis for her three causes of action, Plaintiff alleges that in "2020 and/or 2021, [she] was a patient of [LRMC]" and that "[a]s a condition of her treatment, she was required to provide and entrust her PII and PHI, including but not limited to her name, address, date of birth, and/or Social Security number as well as health insurance information, medical record number, patient account number, and/or limited treatment information."  [*Id.* at ¶ 68.]  Plaintiff further alleges that "[o]n or around July 30, 2021, [she] received a letter notifying her of the [Ransomware Attack]."  [*Id.* at ¶ 69.]  Plaintiff does not allege what was in the letter, nor does she attach the letter to the Complaint.

Likewise, Plaintiff does not allege that, as a result of the Ransomware Attack, she suffered any type of fraud, attempted fraud, or out-of-pocket expenses.  Instead, she claims (1) that "she suffered actual injury in the form of damages to and diminution in the value of her PII and PHI" ("Diminution-in-Value Theory") [Dkt. No. 1-1, ¶ 73]; (2) that she "suffered lost time, annoyance, interference, and inconvenience as a result of the [Ransomware Attack]" ("Lost-Time Theory") [Dkt. No. 1-1, ¶ 74]; (3) that she now "has anxiety and increased concerns about the loss of her privacy" ("Anxiety Theory") [Dkt. No. 1-1, ¶ 74]; and (4) that she "has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI, especially her Social Security number, in combination with her name and date of birth, being placed in the hands of unauthorized third parties and possible criminals" ("Increased-Risk-of-Future-Harm Theory") [Dkt. No. 1-1, ¶ 75].

---

[1] On October 14, 2021, UF Health Central Florida timely removed the action to this Court pursuant to the Class Action Fairness Act. [*See* Dkt. No. 1.]

4

Plaintiff also seeks injunctive relief, alleging that she "has a continuing interest in ensuring that her PII and PHI, which…remains backed up in [UF Health's] possession, is protected and safeguarded from future breaches." [Dkt. No. 1-1, ¶ 76.]

## III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A court considering a motion to dismiss must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  That does not mean, however, that all allegations must be accepted as true; "only *well pleaded* factual allegations are taken as true and only *reasonable* inferences are drawn in favor of the plaintiff." *United States v. Kottemann Law Firm PLLC,* 3:12CV114/MCR/CJK, 2013 WL 3866525, at *2 (N.D. Fla. July 25, 2013) (emphasis in original) (citing *Oladeinde v. City of Birmingham,* 963 F.2d 1481 (11th Cir. 1992)).  Mere "labels and conclusions" are not accepted as true, and "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly,* 550 U.S. at 555.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is because "the conclusory nature" of such allegations "disentitles them to the presumption of truth." *Id.* at 681.

IV.   **ARGUMENT**

   A.   **Plaintiff's Breach-of-Contract Claim Is Barred By Sovereign Immunity.**

         1.   **Florida's Sovereign Immunity Statute Applies to All Three Defendants: The Villages, LRMC, and Central Florida.**

Florida's sovereign immunity statute provides that "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act" and that "[a]ctions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act." Fla. Stat. Ann. § 768.28(1).

Additionally, "[f]or purposes of sovereign immunity pursuant to s. 768.28(2), Shands Teaching Hospital and Clinics, Inc., and any not-for-profit subsidiary which directly delivers health care services and whose governing board is chaired by the president of the university or his or her designee and is controlled by the University of Florida Board of Trustees, which may act through the president of the university or his or her designee and whose primary purpose is the support of the University of Florida Board of Trustees' health affairs mission, shall be conclusively deemed a corporation primarily acting as an instrumentality of the state." Fla. Stat. Ann. § 1004.41(4)(e).

Here, Central Florida is a Florida not-for-profit corporation and a wholly owned subsidiary of Shands Teaching Hospital and Clinics, Inc. [*See* Dkt. Nos. 9-10.]   Therefore, Central Florida

"shall be conclusively deemed a corporation primarily acting as an instrumentality of the state." Fla. Stat. Ann. § 1004.41(4)(e).  The Villages and LRMC are not-for-profit corporations and subsidiaries of Central Florida. [*See* Dkt. Nos. 9-10.]  Therefore, like Central Florida, The Villages and LRM are also "conclusively deemed a corporation primarily acting as an instrumentality of the state." Fla. Stat. Ann. § 1004.41(4)(e). And as "corporation[s] primarily acting as an instrumentalit[ies] of the state," Central Florida, The Villages, and LRMC are all protected by Florida's sovereign immunity.

### 2.    UF Health Central Florida Did Not Waive Its Sovereign Immunity.

"In Florida, sovereign immunity is the rule, rather than the exception, as evidenced by article X, section 13 of the Florida Constitution: 'Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.'" *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). Although "the legislature has explicitly waived," subject to certain limitations, "sovereign immunity in tort," "[t]here is no analogous waiver in contract." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984); *see also City of Fort Lauderdale v. Israel*, 178 So. 3d 444, 446 (Fla. Dist. Ct. App. 2015) ("The Florida Legislature has expressly provided for limited waiver of sovereign immunity in tort through section 768.28, Florida Statutes (2015).").  That said, "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

This exception to contractual sovereign immunity, however, is not without limitation.  It only applies to "suits on ***express, written contracts*** into which the state agency has statutory authority to enter." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 6 (Fla. 1984) (emphasis

added); *see also City of Fort Lauderdale v. Israel,* 178 So. 3d 444, 447 (Fla. Dist. Ct. App. 2015) (reversing lower court's denial of defendant's summary judgment motion because "with no written contract to defeat the City's sovereign immunity claim, the Sheriff's suit against the City is similarly barred"); *Williams v. Fla. State Univ.*, No. 4:11-CV-350-MW/CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014), *aff'd sub nom. Williams v. Becker*, 608 F. App'x 905 (11th Cir. 2015) ("As established nearly thirty years ago in *Pan–Am*, sovereign immunity is not waived for claims based on an unwritten, implied contract."); *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cty.*, 488 F. Supp. 2d 1231, 1236 (S.D. Fla. 2007) ("[T]he implied contract alleged in Count II is not an express written contract and therefore it fails to escape the sovereign immunity bar as articulated in *Pan–Am*.").

Here, although Plaintiff labels her claim as a breach-of-contract claim, it clearly is a breach-of-*implied*-contract claim. "Where an agreement is arrived at by words,…the contract is said to be 'express.'" *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1304 (S.D. Fla. 2012), aff'd, 714 F.3d 1234 (11th Cir. 2013). In contrast, "[a] contract implied in fact is an enforceable contract that is inferred in whole or in part from the parties' conduct, not solely from their words." *CDS & Assocs. of Palm Beaches, Inc. v. 1711 Donna Rd. Assocs., Inc.*, 743 So. 2d 1223, 1224 (Fla. Dist. Ct. App. 1999).

Plaintiff's own allegations make clear that there was no contractual promise for data security entered into by UF Health Central Florida in writing. Plaintiff alleges that "[b]y obtaining, collecting, using, and deriving benefits from Plaintiff's and Class Members' PII, [UF Health Central Florida] *assumed* legal and equitable duties to those individuals." [Dkt. No. 1-1, ¶¶ 8 (emphasis added), 47 (same).] In other words, Plaintiff alleges that, if there was, in fact, a contract for data security, that contract was "inferred in whole or in part from the parties' conduct, not

solely from their words," which is the definition of an implied-in-fact contract.  *See CDS & Assocs. of Palm Beaches, Inc.*, 743 So. 2d at 224.

Plaintiff tries to avoid this inevitable conclusion by citing to and relying on LRMC's "'Privacy Policy' on its website (the 'Privacy Notice'), effective April 14, 2003 and revised February 17, 2010 and September 23, 2014."  [Dkt. No. 1-1, ¶ 29.]  Privacy policies, however, are not contracts.

For example, in *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017), the plaintiff argued that the defendant breached its contractual obligations by failing to protect her "private, personal data from security breaches." *Id.* at 1367. As the basis for her claim, the plaintiff cited to the defendant's privacy policy and, specifically, to the following provisions:

> "Each time you visit a hospital, physician, or other healthcare provider, a record of your visit is made. Typically, this record contains your symptoms, examination and test results, diagnoses, treatment, a plan for future care or treatment, and billing related information. This notice applies to all of the records of your care generated by the facility, whether made by facility personnel, agents of the facility, or your personal doctor
> ....
> "We are required by law to maintain the privacy of [such] health information, provide you a description of our privacy practices, and to notify you following a breach of unsecured protected health information. We will abide by the terms of this notice .... Other uses and disclosures of health information not covered by this notice or the laws that apply to us will be made only with your written authorization.
> ....
> "Patients shall have their medical records, including all computerized medical information, kept confidential ...."

*Id.* at 1367.

The court, however, found that "[t]hese provisions, despite Plaintiff's protestations otherwise, are not contractual in nature." *Id.*  Instead, the court stated, "these provisions inform patients of their rights under federal law—specifically the Health Insurance Portability and

Accountability Act of 1996 ('HIPAA')—and the duties imposed upon the Defendants by these statutory provisions." *Id.* Thus, "[b]ecause the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions cannot create contractual obligations." *Id.* The court also noted that "it is well-established that HIPAA provides no private right of action," and "Plaintiff cannot mask a HIPAA claim as a breach of contract claim." *Id.* at 1367-1368. Ultimately, the court dismissed the breach-of-implied contract claim because the plaintiff had "identified no contractual provision where the Defendants agreed to provide her with data security services in exchange for consideration." *Id.* at 1368. Several other courts have reached the same conclusion. *See, e.g., In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (dismissing breach-of-contract claim because privacy policy "cannot be read as a promise to do anything above and beyond what is already required by law," contained nothing to "suggest[] a reasonably ascertainable promise to do anything not already required by law," and, therefore, "is simply not supported by consideration because Defendant was already under a preexisting legal duty to protect Plaintiff's information"); *Dyer v. Nw. Airlines Corps.,* 334 F. Supp. 2d 1196, 1199–200 (D.N.D. 2004) (finding that "the Plaintiffs' breach of contract claim fails as a matter of law" because "broad statements of company policy," like those in a privacy policy, "do not generally give rise to contract claims").

This Court should reach the same conclusion. Like the plaintiffs in *Brush*, Plaintiff here cites two provisions in the Privacy Notice that state: (1) "[w]e are committed to protecting that medical information" and (2) "[w]e are required by law to make sure that health-related information that identifies you is kept confidential." [Dkt. No. 1-1, ¶¶ 31-32.] These provisions, like those cited and relied upon by the plaintiffs in *Brush*, merely "inform patients of their rights

under federal law—specifically the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')—and the duties imposed upon the Defendants by these statutory provisions." *Brush,* 238 F. Supp. 3d at 1367. Thus, like the plaintiffs in *Brush*, Plaintiff here has "identified no contractual provision where the Defendants agreed to provide her with data security services in exchange for consideration." *Brush,* 238 F. Supp. 3d 1368. And, as such, Plaintiff here has identified no *written*, contractual provision sufficient to waive UF Health Central Florida's sovereign immunity. The breach-of-contract claim must be dismissed.

### B.      Regardless of Sovereign Immunity, Plaintiff Has Failed to Allege the Existence of a Contract for Data Security.

It is well-settled Florida law that "[t]o prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017). Additionally, "[i]n order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto Ins. Co.*, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 14, 2014).

Here, as discussed above, the only "terms" referenced in the Complaint are those contained in the Privacy Notice, which, also as discussed above, does not contain any binding contractual provisions. Moreover, if the entire Privacy Notice is analyzed, it is clear that UF Health Central Florida was not promising to provide any level of data security. The Privacy Notice expressly references the possibility of a data breach and what UF Health Central Florida would do in the event that a data breach occurred. [*See* Dkt. No. 1-1, Exhibit 1, pp. 4-5 ("Right to receive notice of any breach of unsecured PHI.").] Plaintiff cannot, on the one hand, rely on the Privacy Notice in an attempt to establish that UF Health Central Florida guaranteed data security while, on the

other hand, ignore that the Privacy Notice acknowledges the very real possibility that a breach could occur.  Plaintiff has not established that she entered into a contract with UF Health Central Florida for data security.  Her breach-of-contract claim should be dismissed.

    **C.**    <u>**Plaintiff Has Failed to Allege That She Suffered Any Cognizable Injury as a Result of the Ransomware Attack, A Necessary Element of Each of Her claims.**</u>

Under Florida law, every claim asserted by Plaintiff—negligence, breach of contract, and breach of fiduciary duty—requires her to allege that she suffered cognizable injury as a result of the Ransomware Attack. *See Tank Tech, Inc. v. Valley Tank Testing, L.L.C.,* 244 So. 3d 383, 392 (Fla. Dist. Ct. App. 2018) ("There are four elements of a negligence claim: duty, breach of that duty, proximate cause, ***and actual loss or damage***." (emphasis added)); *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP,* 137 So. 3d 1081, 1094–95 (Fla. Dist. Ct. App. 2014) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) ***damages***." (emphasis added)); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such ***that it is the proximate cause of the plaintiff's damages***." (emphasis added)).

Here, Plaintiff does not allege that she suffered, as a result of the Ransomware Attack, any fraud, attempted fraud, or out-of-pocket expenses.  Instead, she relies on four damage theories: (1) Diminution-in-Value-of-PII Theory; (2) Lost-Time Theory; (3) Anxiety Theory; (4) Increased-Risk-of-Future-Harm Theory.   Courts, however, have rejected each of these theories as constituting cognizable injury.

    **1.**    **An Increased Risk of Future Harm Is Not A Cognizable Injury.**

In data-breach class actions such as this one, plaintiffs often assert that, as a result of the data incident, they (1) are now at an increased risk of suffering some type of harm in the future (i.e., fraud, attempted fraud, or out-of-pocket expenses) and, therefore, (2) have established injury-

in-fact for purposes of Article III standing. *See, e.g., In re 21st Century Oncology Customer Data Sec. Breach Litig*., 380 F. Supp. 3d 1243, 1256 (M.D. Fla. 2019) ("[B]ased on the facts alleged in the Complaint, the Court finds that Plaintiffs have demonstrated an Article III injury in fact based on an increased risk of identity theft."); *In re Brinker Data Incident Litig*., No. 3:18-CV-686-J-32MCR, 2019 WL 3502993, at *6 (M.D. Fla. Aug. 1, 2019) ("An increased risk of future harm is, in some circumstances, sufficient for standing.").  Here, however, UF Health Central Florida is not challenging Plaintiff's Article III standing; it is challenging whether Plaintiff has sufficiently alleged cognizable injury as an element of her causes of action, which is a different question decided under a more stringent standard. *See Debernardis v. IQ Formulations, LLC,* 942 F.3d 1076, 1084 (11th Cir. 2019) (stating that the court "must 'not ... conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive'" (quoting *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir. 2009)). *See also Dugas v. Starwood Hotels & Resorts Worldwide, Inc*., No. 316CV00014GPCBLM, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016) ("A holding that a plaintiff has pled an injury in fact for purposes of Article III standing does not establish that he adequately pled his cause of action."); *see also id.* ("However, that Plaintiff has pled an injury in fact for purposes of Article III standing as to the § 1798.81.5 claim does not establish that he has adequately pled damages for the cause of action."); *Moyer v. Michaels Stores, Inc*., No. 14 C 561, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) ("[A]lthough Plaintiffs have standing, they have not pled the type of actual economic damage necessary to state Illinois law claims for breach of implied contract (Count I) or violation of the Consumer Fraud Act (Counts II and III).").

For that reason, under a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), like the motion here, courts almost universally hold that the increased risk of future harm,

13

absent actual fraud or out-of-pocket expenses, is not "cognizable injury."  *See, e.g., Krottner v. Starbucks Corp*., 406 F. App'x 129, 131 (9th Cir. 2010) (finding Article III standing but holding that such a finding "does not establish that [plaintiffs] adequately pled damages for purposes of their state-law claims"); *Doe v. Chao*, 540 U.S. 614, 624–25, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) (explaining that an individual may suffer Article III injury and yet fail to plead a proper cause of action); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (finding allegations satisfied standing for negligence, but dismissed claim on merits because "[w]ithout more than allegations of increased risk of future identity theft, the plaintiffs ha[d] not suffered a harm that the law is prepared to remedy"); *Zeldman v. Pershing LLC*, No. 09-22609-CIV, 2010 WL 11505834, at *5 (S.D. Fla. Aug. 20, 2010) (dismissing under Federal Rule of Civil Procedure 12(b)(6) claims for or breach of express warranty, negligence, gross negligence, violations of FDUTPA, unjust enrichment, and breach of contract because plaintiff's "alleged harm boils down to the increased chance of an increased risk of identity theft"); *Muchnik v. Sambodromo, LLC*, No. 08-21248-CIV, 2009 WL 10667067, at *2 (S.D. Fla. May 18, 2009) (stating that the plaintiff cannot avoid dismissal "by alleging that she is injured because she is concerned she may suffer actual damages"); *I Tan Tsao v. Captiva MVP Rest. Partners, LLC*, No. 8:18-CV-1606-T-02SPF, 2018 WL 5717479, at *2 (M.D. Fla. Nov. 1, 2018), *aff'd sub nom. Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021) (dismissing claims, in Article III standing context because allegations of future harm equate "to speculation of future, potential injury at best"); *Hammond v. Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060, 2010 WL 2643307, *9 (S.D.N.Y. June 25, 2010) ("Plaintiffs' alleged increased risk of identity theft is insufficient to support Plaintiffs' substantive claims.").

4857-1376-7169.15

This case is no different.  Plaintiff has merely alleged that the Ransomware attack may, at some point in the future, result in her suffering some type of alleged "harm."  That is not a cognizable injury "the law is prepared to remedy."  *Pisciotta*, 499 F.3d at 639. Plaintiff's claims should be dismissed.

**2.     Plaintiff's Alleged "Diminution in Value of Her PII" Is Insufficient to Establish Cognizable Injury.**

Plaintiff next alleges that her "injuries" include "lost or diminished value of PII and PHI." [Dkt. No. 1-1, ¶¶ 13, 73 (alleging that Plaintiff "suffered actual injury in the form of damages to and diminution in the value of her PII and PHI").] But courts have also routinely rejected the "loss of value in PII" theory of injury when the plaintiff, like Plaintiff here, does not "contend that [she] intended to sell this information on the cyber black market in the first place" and does not provide any facts as to "whether or how the data has been devalued by the breach."  *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.* ("*SAIC*"), 45 F. Supp. 3d 14, 30 (D.D.C. 2014); *see also Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370440, at *2 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) (same, but in Article III standing context); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, *4 (rejecting claim that "an individual's personal identifying information has any compensable value in the economy at large"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 531 (D. Md. 2016) (rejecting, in standing context, diminution in value theory because plaintiff did not "explain how the hackers' possession of that information ha[d] diminished its value, nor d[id] she assert that she would ever actually sell her own personal information"); *Green v. eBay*, Civil Action No. 14–1688, 2015 WL 2066531, at *5 n.5 (E.D. La. May 4, 2015) (finding, in the standing

15

context, that "[e]ven if the Court were to find that personal information has an inherent value and the deprivation of such value is an injury sufficient to confer standing, Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach.").

Here, although Plaintiff makes some vague allegations, unrelated to her or her information, regarding the "dark web," the price information can be sold on the dark web, and the timing of such sales, [Dkt. No. 1-1, ¶¶ 54,58-62], she does not allege that she attempted to sell, but was either foreclosed from selling or was forced to take a diminished price for her PII and PHI.  Nor does she allege any facts that would suggest, let alone establish, how her PII and/or PHI lost value as a result of the Ransomware Attack.  She merely claims that it has, which, at the motion to dismiss stage, this Court need not accept as true. *Twombly,* 550 U.S. at 555.  Plaintiff's claims should be dismissed.

### 3.   Lost Time, Absent Any Fraud, Attempted Fraud, or Out-of-Pocket Expenses, Does Not Suffice.

Plaintiff also alleges that, as a result of the Ransomware Attack, she "lost opportunity costs associated with attempting to mitigate the actual consequences of the Cybersecurity Event, including but not limited to lost time." [Dkt. No. 1-1, ¶¶ 13, 70 (alleging that Plaintiff "spent time dealing with the with the consequences of the Cybersecurity Event, which includes time spent verifying the legitimacy of the letter, exploring credit monitoring and identify theft insurance options, and self-monitoring her accounts"), 124 (same as Paragraph 13), 135 (alleging that Plaintiff spent time "on credit monitoring and identity theft insurance;" "scrutinizing bank statements, credit card statements, and credit reports;" and "initiating fraud alerts").]

The majority of courts, however, hold that, absent any actual or attempted fraud or any out-of-pocket expenses, allegations of lost time are insufficient to state a cause of action. *See, e.g.,*

*Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").

As noted above, nowhere in her complaint does Plaintiff allege that she incurred any out-of-pocket expenses as a result of the Ransomware Attack.  In fact, she does not even allege that she has incurred any actual or attempted fraud because of the Ransomware Attack.  As such, her "lost-time" allegations are insufficient to state a cause of action. Her claims must be dismissed.

### 4.  Anxiety, Alone, Is Not Enough to Allege Cognizable Injury.

In addition to alleging an increased risk of identity theft in the future, diminution in the value of her PII and PHI, and lost time, Plaintiff also alleges that she "has anxiety and increased concerns for the loss of her privacy." [Dkt. No. 1-1, ¶ 74.] Florida, however, has adopted the "impact rule," which is "applicable to cases," like this one, "in which the plaintiff claims mental or emotional damages but has not sustained any physical impact or contact… ." *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007); *see also Pineda v. PRC, LLC, No. 1:11-CV-20894-JLK*, 2011 WL 3022564, at *2 (S.D. Fla. July 22, 2011) ("Florida's 'impact rule' limits the availability of damages for emotional or mental injuries in negligence cases.").

There are, however, two exceptions to the impact rule. *New Hampshire Ins. Co. v. Hill*, No. CIV.A. 11-414-CG-B, 2012 WL 3685500, at *5 (S.D. Ala. Aug. 23, 2012), *aff'd*, 516 F. App'x 803 (11th Cir. 2013).  The first exception requires the plaintiff to establish (1) that "the complained-of mental anguish" was "manifested by physical injury;" (2) that the plaintiff was "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event

17

occurs, and (3) that the plaintiff suffered the "complained-of mental distress and accompanying physical impairment "within a short time of the incident." *Id.*   Clearly, Plaintiff here cannot establish this exception, as she has not alleged a "physical manifestation" of her alleged anxiety and certainly was not "involved" in the Ransomware Attack.

The other exception "applies 'in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding the application of the impact rule.'" *Id.* (quoting *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 206 (Fla.2007)).   The Florida Supreme Court has applied this exception in at least two cases involving the disclosure of personal information.   But, in both of those cases, the information disclosed was so personal and private that the underlying purpose of the impact rule—namely, avoiding "open[ing] the floodgates for fictitious or speculative claims" based on "purely emotional distress"—was not implicated. Emotional distress was the necessary and, likely, unavoidable consequence of the disclosure.   That is not the case here.

In *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002), the plaintiffs were spouses who were each individually receiving counseling from the defendant psychotherapist. *Id.* at 350.   The plaintiffs alleged that the defendant "during individual therapy sessions, would inquire about, and each of the [plaintiffs] would disclose to him, very sensitive and personal information that neither had disclosed to the other spouse at any time during their relationship. [Plaintiffs] would disclose this information because they were led to believe, by [the defendant], that such information was necessary for treatment purposes." *Id.* at 351. The plaintiffs further alleged that the defendant "unlawfully divulged to each of the [plaintiffs] 'individual, confidential information which the other spouse had told him in their private sessions'" and that, "[s]ubsequent to these disclosures,

the [plaintiffs] set forth that they realized that [the defendant] had devised 'a plan of action ... designed to get [them] to divorce each other.'" *Id.*

The defendant then filed a motion to dismiss, arguing that the plaintiffs had not alleged an actionable cause of action under Florida law because "Florida law does not recognize a cause of action for negligent infliction of emotional distress without an accompanying physical injury." *Id.* The trial court agreed and dismissed the action.  *Id.*

On appeal, the Florida Supreme Court reversed.  The Florida Supreme Court was not concerned that its decision in *Gracey* would "open the floodgates of litigation" because the court could "envision few occurrences more likely to result in emotional distress than having one's psychotherapist reveal without authorization or justification the most confidential details of one's life." *Id.* at 356.

Five years later, the Florida Supreme Court reached a similar conclusion in *Fla. Dep't of Corr. v. Abril* ("*Abril*"), 969 So. 2d 201 (Fla. 2007).  There, the plaintiff sued the defendant, a blood-testing laboratory, for actively disclosing, through the use of an unsecured facsimile transmission, the plaintiff's HIV-test results, which incorrectly showed that the plaintiff was HIV positive.  *Id.* at 203. And, "based on [its] recent precedent in *Gracey* [the Florida Supreme Court] agree[d] that an exception to the impact rule should be made when a laboratory or other health care provider is negligent in failing to keep confidential the results of an HIV test." *Id.* at 208.

In each of the *Gracey* and *Abril* decisions, however, the Florida Supreme Court made clear that the rulings were limited to the specific facts of those cases. *See Gracey*, 837 So. 2d at 358 ("Today we simply hold that the impact rule is inapplicable under the particular facts of the case before us."); *Abril*, 969 So. 2d 201, 208 (Fla. 2007) (holding that the impact rule "does not bar a cause of action for a breach of confidentiality in negligently disclosing the results of HIV testing").

This case presents facts entirely different than those in *Gracey* and *Abril*. In both *Gracey* and *Abril,* the disclosure of the information, which, in both cases, was undisputed, necessarily resulted in emotional distress. Here, at best, Plaintiff alleges that an "unauthorized actor ***may have accessed*** the PII and PHI of [UF Health Central Florida's] current and former patients, including Plaintiff and Class Members," [Dkt. No. 1-1, ¶ 6 (emphasis added)], and that that PHI may have included "limited treatment information," [*id.* at ¶ 1.] That is a far cry from the intimate marital details disclosed in *Gracey* and the erroneous HIV-positive test results disclosed in *Abril.*

Moreover, courts have noted that the reasoning in *Gracey* and *Abril* does not apply to cases where the "only foreseeable damages are [not] non-economic damages." *See G4S Secure Sols. USA, Inc. v. Golzar*, 208 So. 3d 204, 209–10 (Fla. Dist. Ct. App. 2016) (applying the impact rule to "negligent hiring, negligent retention, and negligent supervision" because they are not "torts in which the only foreseeable damages are non-economic damages"); *McIntosh v. Royal Caribbean Cruises, Ltd.*, No. 17-CV-23575, 2019 WL 409297, at *3 (S.D. Fla. Feb. 1, 2019), *rev'd and remanded on other grounds*, 5 F.4th 1309 (11th Cir. 2021) (applying impact rule because "economic damages from canceling or rerouting a cruise are reasonably foreseeable, and any emotional distress damages are at best indirect").

Here, Plaintiff's own allegations highlight the fact that non-economic damages (i.e., emotional distress) are not the only foreseeable damages caused by the Ransomware Attack. She alleges that "[a]t all relevant times, [UF Health Central Florida] knew, or reasonably should have known…of the ***foreseeable consequences*** that would occur if [UF Health Central Florida's] data security system was breached, including, specifically, the ***significant costs*** that would be imposed on [UF Health Central Florida's] current and former patients as a result of a breach." [Dkt. No. 1-1, ¶ 63.] Additionally, according to Plaintiff, many, if not most, of these alleged "significant costs"

are economic in nature, like "actual identity theft," [*id.* at ¶ 124], "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI," [*id.*], "costs associated with placing freezes on credit reports," [*id.*], and "other economic…losses," [*id.* at ¶ 125.].

Put simply, none of the reasons present in *Gracey* and *Abril* that supported the Florida Supreme Court's decision not to apply the impact rule is present here.  Even if there was information actually disclosed, which Plaintiff does not allege, that disclosure does not necessarily result in emotional distress and that disclosure can be remedied through economic damages, if they exist.  Plaintiff's claims should be dismissed.

### 5. Plaintiffs' Other, Generic "Damage-Related" Allegations Do Nothing to Save Her Claims.

Plaintiff also alleges a myriad of "damages" that are not specific to her and, at times, contradicted by the allegations specific to her.  For example, Plaintiff alleges that she "and the Nationwide Class have suffered and will suffer "actual identity theft," "out-of-pocket expenses," and "costs associated with placing freezes on credit reports." [Dkt. No.1-1, ¶ 124.]  But nowhere in the Complaint does Plaintiff allege any facts to show that she suffered any of  these alleged damages.  Instead, they are merely generic allegations, apparently applicable to the entire class and based entirely on speculation.  Such allegations cannot defeat a motion to dismiss.  *See, e.g., In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1166 (N.D. Ga. 2019) (granting, in part, motion to dismiss because "[t]he only allegations of injury are generic and abstract"); *McCants v. Nat'l Collegiate Athletic Ass'n*, 201 F. Supp. 3d 732, 740 (M.D.N.C. 2016) ("In considering the NCAA's motion to dismiss Plaintiffs' putative class action Complaint, the Court can only consider allegations related to the named plaintiffs—McCants and Ramsay—and not generalized allegations concerning unnamed plaintiffs or putative class members.").

Similarly, Plaintiff's conclusory allegation that she seeks "nominal damages" under her negligence, breach-of-contract, and breach-of-fiduciary-duty claims does not save those claims. [Dkt. No. 1-1, ¶¶ 128 (negligence), 137 (breach of contract), 144 (breach of fiduciary duty).]  First, with regard to her negligence claim, nominal damages are not available. *Johnson v. Stephens Dev. Corp.*, 538 F.2d 664, 666 (5th Cir. 1976) (holding that because "the cause of action [for negligence] does not arise until there is harm to the victim…nominal damages are inappropriate").  Second, while Florida law may allow recovery of nominal damages in certain circumstances under breach-of-contract and breach-of-fiduciary-duty claims, it only does so "where the allegations of a complaint show the invasion of a legal right." *Swope Rodante, P.A. v. Harmon*, 85 So. 3d 508, 510 (Fla. Dist. Ct. App. 2012).  UF Health Central Florida, merely by being a victim of third-party Ransomware Attack, did not invade Plaintiff's legal rights. As specifically discussed above, Plaintiff's allegations (1) fail to show that UF Health Central Florida had a contractual obligation to protect her information; (2) fail to show that even if such a contractual obligation did exist, it was express, thereby triggering sovereign immunity; and (3) fail to show that UF Health Central Florida owed Plaintiff a *fiduciary* duty to protect her information.  Notably, the United States Supreme Court has addressed this very issue and has held that while a claim for nominal damages might support a finding of Article III standing, "a request for nominal damages [does not] guarantee entry to court." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021).  The plaintiff still must "plead a cognizable cause of action," *id.*, which Plaintiff has not done here.  Her claims must be dismissed.

4857-1376-7169.15

**D.**     **Plaintiff Has Not Alleged That UF Health Central Florida Owed Her a Fiduciary Duty to Protect Her PII and PHI.**

Under Florida law, to prevail on a breach-of-fiduciary-duty claim, Plaintiff must "prove the existence of a fiduciary duty; breach of that duty; and damages caused by the breach." *In re Palm Ave. Partners, LLC*, 611 B.R. 457, 472 (Bankr. M.D. Fla. 2019).

Although the doctor-patient relationship "has been historically recognized as a fiduciary relationship as a matter of law," *Attias v. CareFirst, Inc*., 365 F. Supp. 3d 1, 23 (D.D.C. 2019), *appeal dismissed*, 969 F.3d 412 (D.C. Cir. 2020), *and on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021), the question here is whether Defendants, as hospitals, owed Plaintiff a *fiduciary* duty to guarantee the safety of her electronically stored PII and PHI.

Although courts in Florida have found a breach of fiduciary duty where a medical provider ***actively discloses*** confidential information about its patient, *see, e.g., Gracey*, 837 So. 2d at 354 ("Clearly evident in the decisions of courts that have determined that a fiduciary relationship exists in the psychotherapist-patient and physician-patient contexts is the notion that a fiduciary has a duty not to disclose the confidences reposed in him by his patients."); *Abril v. Dep't of Corr.*, 884 So. 2d 206 (Fla. Dist. Ct. App. 2004), *approved sub nom. Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201 (Fla. 2007) (finding breach of fiduciary duty where lab sent unencrypted HIV results via facsimile), no Florida case, to UF Health Central Florida's knowledge, has reached that conclusion where, as here, the alleged disclosure was the result of a criminal cyberattack perpetrated by a third party.

Other courts, however, considering whether a data breach resulting from a criminal act constitutes a breach of fiduciary duty have held that it does not. *McKenzie v. Allconnect, Inc*., 369 F. Supp. 3d 810, 823 (E.D. Ky. 2019) ("Simply put, the law does not support Plaintiffs' contention that a fiduciary relationship existed between Allconnect and Allconnect employees in relation to

securing the personal information of employees."); *Attias*, 365 F. Supp. 3d at 23 (finding no breach

of fiduciary duty where health insurance company suffered data breach); *In re Premera Blue Cross*

*Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1203 (D. Or. 2016) (finding no fiduciary

duty between insured and insurer).

While these cases did not involve a patient-hospital relationship, the rationale behind the

rulings applies equally here—namely, that even if the relationship as a whole could give rise to a

fiduciary duty (i.e., employee-employer, doctor-patient, etc.), that does not mean that "a fiduciary

relationship existed…in relation to securing the personal information" of the plaintiff.  *McKenzie*,

369 F. Supp. 3d at 823.  Plaintiff has failed to allege sufficient facts to show that UF Health Central

Florida owed her a fiduciary duty to guarantee the safety of her PII and PHI from a third party

cyberattack.  Therefore, her claim must be dismissed.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants The Villages Tri-County Medical Center, Inc. d/b/a

UF Health the Villages Hospital (erroneous sued as The Villages Tri-County Medical Center, Inc.

d/b/a UF Health Central Florida); Leesburg Regional Medical Center, Inc. d/b/a UF Health

Leesburg Hospital (erroneous sued as Leesburg Regional Medical Center, Inc. d/b/a UF Health

Central Florida); and Central Florida Health, Inc. d/b/a UF Health Central Florida respectfully

request that the Court grant their Motion to Dismiss, in its entirety and with prejudice.

### <u>Local Rule 3.01(g) Certification</u>

The movants (The Villages Tri-County Medical Center, Inc. d/b/a UF Health the Villages

Hospital (erroneous sued as The Villages Tri-County Medical Center, Inc. d/b/a UF Health Central

Florida); Leesburg Regional Medical Center, Inc. d/b/a UF Health Leesburg Hospital (erroneous

sued as Leesburg Regional Medical Center, Inc. d/b/a UF Health Central Florida); and Central

Florida Health, Inc. d/b/a UF Health Central Florida) hereby certify that prior to filing this motion,

Counsel for the movants conferred with counsel for Plaintiff both by phone and email, and the

parties do not agree on the resolution of this motion.

Respectfully submitted,

DATED:  November 19, 2021          **BAKER & HOSTETLER LLP**

By: */s/ Casie D. Collignon*
        Casie D. Collignon (admitted pro hac vice)
        Email:     *ccollignon@bakerlaw.com*
        1801 California Street, Suite 4400
        Denver, CO 80120
        Telephone: 303.861.0600
        Facsimile: 303.861.7805

        Julie Singer Brady
        Florida Bar No. 389315
        Email:     *jsingerbrady@bakerlaw.co*
        BAKER & HOSTETLER LLP
        200 South Orange Avenue, Suite 2300
        Orlando, FL 32801
        Telephone: 407.649.4000
        Facsimile: 407.841.0168

        *Attorneys for Defendants*
        THE VILLAGES TRI-COUNTY MEDICAL
        CENTER, INC. d/b/a UF HEALTH CENTRAL
        FLORIDA; LEESBURG REGIONAL MEDICAL
        CENTER, INC. d/b/a UF HEALTH CENTRAL
        FLORIDA; and CENTRAL FLORIDA HEALTH, INC.
        d/b/a UF HEALTH CENTRAL FLORIDA

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW** was filed and served through the Court's ECF system on this 19th day of November, 2021 on all counsel of record.

*/s/ Casie D. Collignon*
Casie D. Collignon

4857-1376-7169.15